1

2

3

4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6

7   PAULA RICE-SHERMAN, et al.,              Case No. 19-cv-03613-WHO

         Plaintiffs,
8                                            ORDER DENYING IN PART AND
                                             GRANTING IN PART MOTION TO
9       v.                                   DISMISS AND STRIKE THE FIRST
                                             AMENDED COMPLAINT WITH
10  BIG HEART PET BRANDS, INC.,              LEAVE TO AMEND; DENYING
                                             MOTION TO TRANSFER
         Defendant.
11                                           Re: Dkt. Nos. 45, 46

12

13          Plaintiffs Paula Rice-Sherman, Deborah Coleman, and Wilma Rogers bring this putative

14  class action against defendant Big Heart Pet Brands, Inc. ("Big Heart"), alleging that it falsely

15  markets its Grain Free Easy to Digest Salmon Sweet Potato & Pumpkin Recipe Dog Food

16  ("Nature's Recipe Food" or the "Product") as "Grain Free," and as containing "No Corn" and "No

17  Soy Protein." First Amended Complaint ("FAC") [Dkt. No. 40] ¶¶ 6-8. For the reasons set forth

18  below, I DENY Big Heart's motion to transfer to the Northern District of Ohio, DENY in part its

19  motion to dismiss the FAC and DENY its motion to strike the class definition. Plaintiffs have

20  sufficiently pleaded (i) Article III standing; (ii) fraud under Federal Rule of Civil Procedure 9(b)

21  and the reasonable consumer test[1]; (iii) a UCL claim under all three prongs; (iv), breach of express

22  and implied warranty; (v) and unjust enrichment. However, plaintiffs have not adequately alleged

23  (i) standing for injunctive relief because the risk of future harm has not been pleaded; (ii) equitable

24  relief because it is based on the same false advertising theory as the legal causes of action; and (iii)

25

26  _____

27  [1] Rule 9(b) applies to plaintiffs' class claims for breach of warranty (Counts 2-3), unjust
    enrichment (Count 4), as well as their claims under three California consumer protection statutes –
    the Unfair Competition Law ("UCL"), False Advertising Law ("FAL") and Consumers Legal
28  Remedies Act ("CLRA") (Counts 5-7). Plaintiffs have withdrawn their Magnuson-Moss
    Warranty Act claim (Count 1).

punitive damages because they have failed to meet their requisite burden under the CLRA. Plaintiffs have leave to amend their complaint as to these issues within 20 days of this Order.

## BACKGROUND

### I.  FACTUAL BACKGROUND

Big Heart manufactures Nature's Recipe Food, which it markets and sells nationwide. FAC ¶ 9.  The front, back, sides, and bottom of the packaging prominently states that the Product is "Grain Free"; the front of the bag states that the Product contains "No Corn" and "No Soy Protein."  *Id.* ¶¶ 19, 21-23.  Big Heart's website also touts the health benefits of grain-free pet food.  *Id.* ¶¶ 13-18.

"Pet owners who purchase 'grain free,' products with 'no corn,' and products with 'no soy protein' pay a premium in order to alleviate their pets' allergies and provide various health benefits associated with a grain-free diet."  *Id.* ¶ 25.  All three named plaintiffs allege that they bought the Product at specified times and locations and that they reviewed and relied on the Product's packaging that included representations "Grain Free," "Free of Grains," "No Corn," and "No Soy Protein."  *Id.* ¶ 6; *see also id.* ¶¶ 7-8.  They were unaware that the Product contained any grain, corn, or soy protein given Big Heart's false and misleading claims and would not have purchased the Product if the actual ingredient list had been fully disclosed.  *Id.*

Plaintiffs allege that "independent testing of Nature's Recipe Food confirms that these representations are false because "[it] does, in fact, contain significant amounts of both corn and soy protein."  FAC ¶ 23.  This testing is consistent with numerous academic studies that have found companies in the pet-food industry have inaccurate product labels, non-conforming ingredients, and cross-contamination.  *Id.* ¶¶ 32-38.

Named plaintiffs Coleman and Rogers further claim that their dogs began displaying allergy symptoms after eating the Product.  FAC ¶¶ 40-41.  Coleman's dog developed red skin and rash, and yeast infection in her ear.  *Id.* ¶ 40.  Roger's dog started vomiting after consuming the Product.  *Id.* ¶ 41.  Both Coleman and Rogers incurred hundreds of dollars in veterinarian costs to treat these allergy related conditions.  *Id.* ¶¶ 40-41.

## II.     PROCEDURAL BACKGROUND

On June 21, 2019, plaintiffs filed their initial Complaint, naming eight plaintiffs and asserting fifteen causes of action under seven different state laws.  Dkt. No. 1.  In response to Big Heart's motion to dismiss, they filed an amended complaint removing all non-California state law claims and plaintiffs, and adding two California plaintiffs in addition to Rice-Sherman.  The FAC now names three California plaintiffs and asserts seven causes of action on behalf of a California class – one federal Magnuson-Moss Warranty Act, which was subsequently withdrawn, and six California consumer protection claims.  Big Heart renews its motion to transfer venue and moves to dismiss the FAC for lack of subject matter jurisdiction and failure to state a claim, as well as to strike the overbroad class definition.  *See* Defendant Big Heart Pet Brands Inc.'s Notice of Renewed Motion to Transfer Venue ("MTT") [Dkt No. 45]; Defendant Big Heart Pet Brands Inc.'s Notice of Motion and Motion to Strike and Dismiss First Amended Class Action Complaint ("MTD") [Dkt. No. 46].

## LEGAL STANDARD

## I.     MOTION TO TRANSFER

Provided that the action might have been brought in the transferee court, a court may transfer an action to another district: (1) for the convenience of the parties, (2) for the convenience of the witnesses, and (3) in the interest of justice.  28 U.S.C. § 1404(a); *Lee v. Lockheed Martin Corp.*, No. 03-cv-1533-SI, 2003 WL 22159053, at *1 (N.D. Cal. Sept. 16, 2003).  The Ninth Circuit requires that courts consider a variety of factors in determining whether to transfer an action.  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The relevant factors are:

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Barnes & Noble v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011).  The burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience clearly favors transfer.  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th

Cir. 1979). It is not enough for a defendant to merely show that it prefers another forum, and transfer will also not be allowed if the result is merely to shift the inconvenience from one party to another. *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964).

## II.     MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Under Federal Rule of Procedure 12(b)(1), a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1). "Standing is a threshold matter central to our subject matter jurisdiction." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). "The Supreme Court has made clear that when considering whether a plaintiff has Article III standing, a federal court must assume arguendo the merits of his or her legal claim." *Lorenz v. Safeway, Inc.*, 241 F.Supp.3d 1005, 1014 (N.D. Cal. 2017).

## III.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss if a claim fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a claim must be supported by facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

Under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule 8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011). In deciding

a motion to dismiss for failure to state a claim, the court accepts all of the factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). But the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## IV.     MOTION TO STRIKE

Courts in this district are split on whether a motion to strike class allegations is proper at the motion to dismiss stage. Many judges have held that they may not be. *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. 13-cv-1803-EMC, 2014 WL 1048710, at *3-4 (N.D. Cal. Mar. 14, 2014) (denying motion to strike class action allegations because Rule 12(f) is not the proper vehicle for such a motion); *Clerkin v. MyLife.Com*, No. 11-cv-00527-CW, 2011 WL 3809912, at *3 (N.D. Cal. Aug. 29, 2011) ("Defendants fail to identify any authority permitting the use of a motion to dismiss for failure to state a claim to contest the suitability of class certification."); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-cv-4387-PJH, 2011 WL 2111796, at *13–14 (N.D. Cal. May 26, 2011) ("[S]uch a motion appears to allow a determination of the suitability of proceeding as a class action without actually considering a motion for class certification."); *Swift v. Zynga Game Network, Inc.*, No. 09-cv-05443-SBA, 2010 WL 4569889, at *10 (N.D. Cal. Nov. 3, 2010) (denying motion to strike class action allegations based on Ninth Circuit precedent indicating that Rule 12(f) is not the proper vehicle for such a motion).

Some judges have held that such a motion may be brought at the motion to dismiss stage but that it should be granted only rarely. *See Allagas v. BP Solar Int'l Inc.*, No. 14-cv-00560-SI, 2014 WL 1618279, at *3 (N.D. Cal. Apr. 21, 2014) ("A defendant may move to strike class actions prior to discovery where the complaint demonstrates a class action cannot be maintained on the facts alleged therein."); *In re Apple, AT & T iPad Unlimited Data Plan Litig.*, No. 10-cv-02553-RMW, 2012 WL 2428248, at *2-3 (N.D. Cal. June 26, 2012) (motions to strike class action allegations may be brought at the motion to dismiss stage but are disfavored); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) ("Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations

prior to discovery.").  These judges have held that a motion to strike class claims based only on the pleadings is proper only if the court is "convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." *In re iPad Unlimited Data Plan Litig.*, 2012 WL 2428248 at \*2; *see also Allagas*, 2014 WL 1618279, at \*3; *Sanders*, 672 F.Supp.2d at 990.

## DISCUSSION

### I.     MOTION TO TRANSFER

Big Heart moves to transfer this case to the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a).  *See* MTT 3.  Plaintiffs do not dispute that this case could have been brought in the Northern District of Ohio, but argue that Big Heart has not met its burden to support transfer. *See* Plaintiffs' Opposition to Defendant's Motion to Transfer ("Oppo. MTT") [Dkt. No. 49] 5-6. Considering the convenience and interest of justice factors, I find that transfer is inappropriate in this case.  While the plaintiff's choice of forum is not entitled to much deference, the other factors weigh against transfer.

#### A.     Convenience Factors

##### 1.     Plaintiffs' Choice of Forum

"For purposes of a section 1404(a) analysis, the plaintiff's choice of forum always weighs against transfer." *Brown v. Abercrombie & Fitch Co.*, 13-cv-05205-YGR, 2014 WL 715082, at \*3 (N.D. Cal. Feb. 14, 2014).  The question is "how much weight to give this choice relative to the other factors." *Id.*  The deference afforded to the plaintiffs' choice is "substantially diminished" where "(1) the plaintiff's venue choice is not its residence, (2) the conduct giving rise to the claims occurred in a different forum, (3) the plaintiff sues on behalf of a putative class, or (4) plaintiff's choice of forum was plaintiff's second choice." *Park v. Dole Fresh Vegetables*, Inc., 964 F. Supp. 2d 1088, 1094 (N.D. Cal. 2013) (internal quotation marks and citations omitted).  In determining how much weight to give the plaintiffs' choice of forum, "consideration must be given to the extent of both [plaintiffs' and defendants'] contacts with the forum, including those relating to the [plaintiffs'] cause of action." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir.1987).

The circumstances in this case are similar to *Yung Kim v. Volkswagen Group of America*,

*Inc.*, where the court found that plaintiff's choice of forum "carrie[d] less weight because, when [the] forum was initially chosen, the sole Plaintiff in the case resided outside of this district." No. C 12-1156 CW, 2013 WL 1283399, at *4 (N.D. Cal. Mar. 26, 2013). Here, Rice-Sherman is the only remaining California citizen from the original Complaint, and she resides out of the Northern District of California. MTT 4. The fact that later-added named plaintiffs Coleman and Roger are residents of this District "[does] not retroactively change the circumstances under which the initial forum selection decision was made." *Id. see also Lucas v. Daiichi Sankyo Co.*, No. C 11-0772 CW, 2011 WL 2020443, at *2 (N.D. Cal. May 24, 2011) ("[T]he plaintiff's selection of forum has minimal value where the plaintiff is not a resident of the judicial district in which the suit commenced.").

Although Rice-Sherman is not a resident of this District and this is a putative class action, the conduct giving rise to the claims occurred in this District. Big Heart contends that its headquarters are located in Ohio, but as plaintiffs point out, the headquarters was in San Francisco, California for a long period of time and only recently moved to Ohio in mid-2019 after extensive layoffs. Oppo. MTT 8. Therefore, deference to plaintiffs' choice of forum is neutral at best.

Big Heart primarily focuses its argument on lack of deference to plaintiffs' choice of forum and gives little attention to the other convenience factors that I have to consider. The *Yung Kim* court ultimately transferred the case to the Central District of California not only because plaintiffs' choice of forum warranted little deference, but also because of the "relative convenience that would be afforded to most parties and witnesses, the residence of counsel, and the fact that [a related case] will also be transferred." 2013 WL 1283399, at *4. Unlike *Yung Kim*, the other convenience factors discussed below weigh against transfer.

### 2. Party and Witness Convenience, Ease of Access to Evidence

"The convenience to the witnesses is the most important factor in a section 1404(a) analysis, and the convenience of non-party witnesses is more important than the convenience of the parties." *Brown*, 2014 WL 715082, at *4. Big Heart only identifies employee witnesses who will be inconvenienced by the current venue. MTT 7. But "the convenience of a litigant's employee witnesses [is] entitled to little weight because litigants are able to compel their

employees to testify at trial, regardless of forum." *Skyriver Tech. Sols., LLC v. OCLC Online Computer Library Ctr., Inc.*, 10-cv-03305-JSW, 2010 WL 4366127, at *3 (N.D. Cal. Oct. 28, 2010). And although Big Heart's relevant records might be in electronic and physical form at its principal place of business in Ohio, the prevalence of technology makes access to evidence relatively easy to obtain in any district. *See Doe v. Epic Games, Inc.*, No. 19-CV-03629-YGR, 2020 WL 376573, at *9 (N.D. Cal. Jan. 23, 2020) ("[I]n the age of electronically stored information, the ease of access to evidence is neutral because much of the evidence in this case will be electronic documents, which are relatively easy to obtain in any district.").

Plaintiffs correctly assert that transfer will shift the cross-country travel burden from the defendant to themselves. Oppo. MTT 12-13. Transfer is not warranted "if the effect is simply to shift the inconvenience to the plaintiff." *Imran v. Vital Pharm., Inc.*, No. 18-CV-05758-JST, 2019 WL 1509180, at *1 (N.D. Cal. Apr. 5, 2019) (internal quotation marks and citation omitted); *see also Plexxikon Inc. v. Novartis Pharm. Corp.*, No. 17-CV-04405-HSG, 2017 WL 6389674, at *4 (N.D. Cal. Dec. 7, 2017) (concluding that shifting the inconveniences from defendant to plaintiff was insufficient to warrant transfer).

Altogether, while plaintiffs' choice of forum may not be entitled to much deference, the convenience factors weigh against transfer.

## B. Interest of Justice Factors

To decide whether transfer is in the interest of justice, courts consider factors including "court congestion, local interest in deciding local controversies, conflicts of laws, and burdening citizens in an unrelated forum with jury duty." *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d at 1096 (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).

Big Heart argues that the justice factors favor transfer because the Northern District of Ohio is equally familiar with plaintiffs' federal Magnuson-Moss claim; however, plaintiffs have dropped that claim from their FAC. Plaintiffs' Memorandum in Opposition to Defendant's Motion to Strike and Dismiss First Amended Class Action Complaint ("Oppo. MTD") [Dkt. No. 53] 26 n.21. It also contends that Ohio has an interest in disputes arising from conduct that

8

allegedly occured within its borders.  But the alleged acts or omissions at issue occurred against California citizens.  Further, Big Heart's headquarters were in San Francisco until 2019.  *See* FAC ¶ 9.  California maintains a stronger local interest to enforce its consumer protection claims to protect its residents (the California-only class here) and regulate the alleged wrongful conduct of corporations that were headquartered within the state than Ohio.  *See Imran v. Vital Pharm., Inc.*, 2019 WL 1509180, at *6 (concluding that local interest weighs against transfer because all of the claims were brought under California law on behalf of California consumers despite defendant being headquartered in the Southern District of Florida).

Given that the convenience and interest of justice factors weigh against transferring this case to the Northern District of Ohio, Big Heart's motion to transfer is DENIED.

## II.     MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Standing addresses the constitutional requirement that a plaintiff allege a case or controversy, which at an "irreducible minimum," requires three elements: "(1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct and that is (3) likely to be redressed by the requested relief."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992).  Big Heart argues that plaintiffs lack Article III standing because they do not specifically allege how, where, and why the "independent testing" was performed, and whether each specific Nature's Recipe product purchased by each named plaintiff was tested.  MTD 8.

Such allegations are not necessary for Article III standing.  A "quintessential injury-in-fact" can occur when plaintiffs allege that they "spent money that, absent defendants' actions, they would not have spent."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).  In a similar case, *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 846 (N.D. Cal. 2018), I held that plaintiffs alleged a cognizable injury for purposes of standing because their claims were "premised on their allegation that were it not for defendants' labeling, which omit the presence of lead, arsenic, and BPA in their [contaminated dog food products], plaintiffs would not have purchased and spent money on their Products."

Similar allegations in the food labeling context have repeatedly been held sufficient to establish an economic injury for purposes of both constitutional and statutory standing.  *See, e.g.*,

*Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 961-62 (N.D. Cal. 2013) (finding plaintiff's allegations that he would not have purchased misbranded fruit products absent defendants' representations sufficient for conferring standing, even where plaintiff did not allege physical harm); *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 901 (N.D. Cal. 2012) (holding allegation that plaintiffs would not have purchased a product if the product had been labeled accurately is sufficient to establish injury under California's consumer laws); *Swearingen v. Santa Cruz Nat., Inc.*, No. 13-cv-04291-SI, 2016 WL 4382544, at *4 (N.D. Cal. Aug. 17, 2016) (accepting, for purposes of statutory standing under the UCL and CLRA, plaintiffs' allegations that they did not know that the ingredient "evaporated cane juice" was sugar, and would not have purchased defendants' products if they had known).

Plaintiffs' allegations match the ones described above. Each of the three individual plaintiffs state that, prior to purchasing the Nature's Recipe Food at specified dates, they "reviewed the product packaging that included the representations 'Grain Free' 'Free of Grains,' 'No Corn,' and 'No Soy Protein,' all of which [they] relied upon in deciding to purchase Nature's Recipe Food." FAC ¶ 6; *see also id.* at ¶¶ 7-8. Due to Big Heart's allegedly false and misleading claims, they were "unaware that the Nature's Recipe Food contained any grain, corn, or soy protein," and "would not have purchase the food if the actual ingredient list was fully disclosed." *Id.* at ¶ 6; *see also id.* at ¶¶ 7-8. Plaintiffs have sufficiently pleaded Article III standing.

Big Heart cites an Eighth Circuit case, *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014), for the proposition that plaintiffs are required to specifically allege that the particular product they bought contained the undisclosed ingredients. MTD 10. *Wallace* does not reflect the law of this Circuit. *See McCoy v. Nestle USA, Inc*, 173 F. Supp. 3d 954, 964 (N.D. Cal. 2016), *aff'd sub nom. McCoy v. Nestle USA, Inc.*, 730 F. App'x 462 (9th Cir. 2018) ("This Court respectfully disagrees with [*Wallace*]. In this Court's view, if a customer has paid a premium for an assurance that a product meets certain standards, and the assurance turns out to be meaningless, the premium that the customer has paid is an actual, personal, particularized injury that is cognizable under Article III.")

Big Heart also relies on *Wallace* and another case, *Pels v. Keurig Dr. Pepper, Inc.*, No. 19-

CV-03052-SI, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) to argue that plaintiffs are required to link the independent testing (that allegedly confirms that the representations on Nature's Recipe Food are false) to the Nature's Recipe Food products they purchased. Defendant Big Heart Pet Brands, Inc.'s Reply in Support of Its Motion to Strike and Dismiss First Amended Class Action Complaint ("Reply MTD") [Dkt. No. 62] 4. This argument is not persuasive.

In both *Wallace* and *Pels*, plaintiffs failed to allege that all products were falsely advertised. In *Wallace*, plaintiffs alleged that they paid a premium for hot dogs labeled as kosher, but that defendant sold some packages of hot dogs that were not kosher. *See Wallace*, 747 F.3d at 1030. In *Pels*, plaintiffs did not straightforwardly allege that all Peñafiel mineral spring water during the relevant period was contaminated with arsenic. *See Pels*, 2019 WL 5813422, at *5 (finding single allegation that "[i]t is possible that other Peñafiel varieties—if they draw water from the same source—are similarly dangerous to unsuspecting consumers" to be insufficient). Plaintiffs in both cases failed to allege that "all or even most" of the accused products were falsely advertised and therefore were required to allege that the particular products they purchased were part of a subset of accused products that were falsely advertised. They lacked standing because it was merely speculative whether they purchased any non-kosher hot dogs or non-arsenic Peñafiel mineral spring water.

By contrast, plaintiffs focus their allegations on a particular product, the Nature's Recipe Food, and allege that "independent testing of the Nature's Recipe Food confirms that [the alleged] representations are false," because "Nature's Food Recipe does, in fact, contain significant amounts of both corn and soy protein." FAC ¶ 4. Big Heart takes issue with the fact that the allegations does not include the word "all" such that the FAC could be read as alleging that *all* Nature's Food Recipe does, in fact, contain significant amounts of both corn and soy protein. Plaintiffs' omission of the word "all" is not fatal. A fair reading of their FAC shows that they allege that all Nature's Food Recipe products are falsely advertised. Nowhere in the FAC do plaintiffs allude that some of Nature's Recipe Food is grain-free but that a subset of the product is not. *See, e.g.*, *Von Slomski v. Hain Celestial Grp., Inc.*, No. SACV131757AGANX, 2014 WL 12771116, at *5 (C.D. Cal. June 10, 2014) (distinguishing *Wallace* and finding allegations

1    sufficient for standing because "Plaintiffs broadly allege[d] that the teas contain pesticides, rather

2    than merely alleging that some of the packages contain pesticides").

3        In assessing standing on a motion to dismiss, the court must "presume that [] general

4    allegations," like the ones alleged here, "embrace those specific facts that are necessary to support

5    the claim." *Lujan*, 504 U.S. at 561. Big Heart's motion to dismiss for lack of subject matter

6    jurisdiction is DENIED.

7    **III.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

8        **A.    Plaintiffs Plausibly Plead Fraud Claims Pursuant to Rule 9(b)**

9        Big Heart moves to dismiss plaintiffs' consumer protection claims grounded in fraud

10   because they do not satisfy the heightened pleading standard of Rule 9(b). MTD 12. It argues that

11   the FAC lacks critical facts pertinent to the "who," "what," "when," "where," and "how" of Rule

12   9(b) analysis. Its argument fails.

13       **1.    Particularity**

14       The FAC identifies each plaintiff and defendant (FAC ¶¶1, 9, 13-24); alleges when and

15   where each plaintiff purchased the products (FAC ¶¶6-8)[2]; describes the "Grain Free," "No Corn,"

16   and "No Soy Protein" representations on the Product packages which they relied on (FAC ¶¶ 6-8);

17   describes and provides photographs of the false or misleading information on the packages and on

18   Big Heart's website (FAC ¶¶ 13-18,19-22)[3]; and contends that the claims are false because

19

20   _____

21   [2] Big Heart points out that one of the three named plaintiffs, Rogers, does not state when exactly
     she purchased Nature's Recipe Food. MTD 13; *see* FAC ¶ 8 ("Plaintiff Rogers purchased

22   Nature's Recipe Food on at least one occasion at Pet Smart."). Although this allegation is vague it
     is not fatal because the other two plaintiffs adequately plead when and where they purchased

23   Nature's Recipe Food. *See* FAC ¶ 6 ("Plaintiff Rice-Sherman purchased Nature's Recipe Food on
     numerous occasions including (without limitation) one bag of the food for $9.59 on 09/20/2018 at

24   Target, Los Angeles Eagle Rock, and one bag of the food for $8.83 on 02/24/29 at Walmart Store
     # 05686, 1301 N Victory Place, Burbank, CA 91502."); *see also id.* ¶ 7 ("Plaintiff Coleman

25   purchased Nature's Recipe [Food], 24 lb. bag for $24.53, or 12 lb. bag for $16.59, every month,
     between the 1st and the 3rd of the month, from 2017 to October 2019, at Walmart, 4925 Redwood
     Dr., Rohnert Park CA 94928, Store #1755.").

26   [3] Big Heart argues that the FAC does not allege that plaintiffs relied upon the statements made on

27   Big Heart's website, just that they viewed and relied upon the statements made on the product
     packaging. MTD 17. Plaintiffs clarify that their claims are specifically premised upon the

28   representations made on the product packaging and that the allegations about Big Heart's website
     were only for context and background. Oppo. MTD 16.

independent testing revealed that the Products in fact contain corn and soy (FAC ¶¶ 23-24).

Plaintiffs have fulfilled their burden to describe with particularity the circumstances giving rise to their claims, which sufficiently allows Big Heart to defend against these claims. *See Zeiger*, 304 F. Supp. 3d at 849-50. Big Heart's argument that the FAC should be dismissed because (i) plaintiffs do not provide definitions of grain, corn, soy, and soy protein or (ii) explain the parameters of the alleged independent testing is unpersuasive.

### a.   Definitions of Grain, Corn and Soy Protein

Throughout its motion, Big Heart repeatedly argues that plaintiffs fail to allege definitions for the terms "grain," "corn," "soy," and "soy protein," and whether the corn and soy found in Nature's Recipe Food constitute "grain" or "soy protein." *See* MTD 2, 5, 14, and 17. The relevant question is not what those terms mean, but rather what they mean to reasonable consumers, which cannot be resolved on a motion to dismiss. *See Vicuna v. Alexia Foods, Inc.*, No. C 11-6119 PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) ("Because the question whether a reasonable consumer would likely be deceived by the designation 'All Natural' is a factual dispute, the court finds that these claims cannot be resolved at this stage of the litigation."). Big Heart fails to provide any authority requiring plaintiffs to plead definitions to such commonly used terms to survive a motion to dismiss.

Plaintiffs have plausibly alleged that reasonable consumers would consider the representations "No Corn" and "No Soy Protein" to mean that the Product is free of corn and soy. Big Heart contends that the court cannot "create inferences to bridge the logical gaps in [p]laintiffs' FAC" because the FAC does not plausibly allege why "No Soy Protein" means no *soy*, as opposed to *soy protein*. MTD 14 (quoting *Garcia v. Gen. Motors LLC*, No. 118CV01313LJOBAM, 2019 WL 1209632 (E.D. Cal. Mar. 14, 2019)). Accepting that "No Corn" and "No Soy Protein" mean no corn and soy in the Product is hardly a logical gap. Big Heart also takes issue with whether corn is a grain, but even if it was not, Big Heart forgets that plaintiffs also allege that the Products contain another representation that clearly reads "No Corn."

### b.   Independent Testing

Big Heart fixates on plaintiffs' failure to allege the parameters of the independent testing

that revealed the presence of corn and soy in the Products, and specifically what the Product was tested for. MTD 5, 15. I rejected a similar argument in *Zeiger*:

> WellPet fixates on plaintiffs' allegation that the CORE product "contains a significant level of BPA of approximately 58.5 ppb," Am. Compl. ¶ 20, and contends that this is impermissibly vague because plaintiffs do not allege how they came up with this figure. Yet WellPet cites to no legal authority suggesting that plaintiffs' claims must fail for failure to provide background information on this figure in the complaint, nor does WellPet need such information at the pleadings stage in order to defend against plaintiffs' claims, since it must be accepted as true. Plaintiffs allegations are sufficient to put WellPet on notice of the circumstances giving rise to their claims, and as such, satisfy Rule 9(b).

304 F. Supp. 3d at 850. Big Heart does not need more background information about the independent testing at the pleading stage in order to defend against plaintiffs' claims.

Big Heart's attempts to distinguish *Zeiger* is unconvincing. It argues that the *Zeiger* plaintiffs directly alleged the allowable limit of arsenic and that independent lab testing found that the accused products exceeded that limit. Reply MTD 8. That was not the reason I found that the Rule 9(b) pleading standard was met. Instead, I held that plaintiffs sufficiently pleaded the "how" of their fraud claims because they "describe[d] why [defendant's] claims are false or misleading due to the presence of the contaminants arsenic, lead, and BPA, which is undisclosed by [defendant]. 304 F. Supp. 3d at 849. I did not criticize plaintiffs for failing to describe the exact parameters of the testing that found the accused products contained contaminants arsenic, lead, and BPA. Their allegations were accepted as true, as are plaintiffs' allegations here.

### 2. Reliance, Deception or Causation

Big Heart reiterates that plaintiffs fail to allege how those statements were deceiving when they relied on those statements, or whether their reliance on these alleged misrepresentations were reasonable under the circumstances. MTD 17. Plaintiffs have alleged each of those things. They state that they relied upon the "Grain Fee," "No Corn," and "No Soy Protein" representations on the product packaging in deciding to purchase the product (FAC ¶¶ 39-41) and that they would not have purchased the food if the actual ingredient list was fully disclosed (FAC ¶¶6-8). They claim that the representations were deceiving because independent testing reveals that the Products contain significant amounts of corn and soy (FAC ¶¶23-24) and that it is reasonable to expect that

products with labels "Grain Free" "No Corn" and "No Soy Protein" would mean that the products do not contain corn or soy.  *See*  FAC ¶ 30 ("Defendant knew or should have reasonably expected that the presence of corn and soy in its Nature's Recipe Food is something an average consumer would consider in purchasing dog food that is marketed and sold as "Grain Free," "Free of Grains," containing "No Corn" and "No Soy Protein.").

For the reasons stated above, plaintiffs have sufficiently pleaded fraud, which forms the basis for their class claims for breach of warranty (Counts 2-3), unjust enrichment (Count 4), as well as their claims under the UCL, FAL, and CLRA (Counts 5-7).

### B.    California State Law Claims

Big Heart next argues that plaintiffs have failed to plead claims under the UCL, FAL, and CLRA because (i) the alleged presence of grain and soy in the Product does not meet the reasonable consumer test and (ii) the UCL claims fail under each of the three prongs of fraudulent, unlawful and unfair.[4]

### 1.    Reasonable Consumer Test

Under the reasonable consumer test, a plaintiff must allege that "members of the public are likely to be deceived" by the alleged misrepresentation.  *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  "This requires more than a mere possibility that [the defendant's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'"  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 507–08 (2003)).  The reasonable consumer standard "requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"  *Id.* (quoting *Lavie v. Procter &*

---

[4] Big Heart also seeks to dismiss the CLRA claim with respect to plaintiffs Coleman and Rogers because only Rice-Sherman sent it the pre-suit notification required under section 1782 of the CLRA.  MTD 19.  When one named plaintiff provides written notice to a defendant on behalf of the plaintiff and similarly situated consumers, that notice satisfies section 1782 for all class members.  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F. Supp. 2d 1145, 1174-75 (C.D. Cal. 2010) (holding that one or more named plaintiffs may satisfy the notice requirements of section1782 on behalf of the entire putative class); *Luong v. Subaru of Am., Inc.*, No. 17-CV-03160-YGR, 2018 WL 2047646, at *6 (N.D. Cal. May 2, 2018) (finding named plaintiff's notification sufficient for all putative class members, including another later-added named plaintiff).

*Gamble Co.*, 105. Cal. App. 4th 496, 507-08 (2003)). Because what a reasonable person would believe is generally a question of fact, it is a "rare situation" in which a motion to dismiss will be granted for failure to satisfy this test. *Williams*, 552 F.3d at 938.

Big Heart's argument here is largely repetitive of what is discussed above. It says that plaintiffs do not demonstrate (i) why a reasonable consumer would understand that the "No Soy Protein" label and the soy allegedly detected in the testing are, in fact, the same; or (ii) why a reasonable consumer would understand that the "Grain Free" label means that there is no corn or soy in the Product. MTD 20. These labels are not as ambiguous as such labels as "all natural" or "healthy"; even if they were, the question of whether a reasonable consumer would likely be deceived is a factual dispute that cannot be resolved at the motion to dismiss stage. *See, e.g.*, *Vicuna v. Alexia Foods, Inc.*, No. C 11-6119 PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) ("Because the question whether a reasonable consumer would likely be deceived by the designation "All Natural" is a factual dispute, the court finds that these claims cannot be resolved at this stage of the litigation."); *Parker v. J.M. Smucker Co.*, No. C 13-0690 SC, 2013 WL 4516156, at *3 (N.D. Cal. Aug. 23, 2013) (holding that the truth of plaintiff's theory that product was not natural, making "All Natural" label false, remains to be litigated and cannot be dismissed on the pleadings); *Brown v. Hain Celestial Grp.*, Inc., 913 F. Supp. 2d 881, 898 (N.D. Cal. 2012) (taking plaintiff's allegation that reasonable consumers are deceived by the "pure, natural, and organic" taglines as true at the pleadings stage).

Big Heart also asserts that plaintiffs' claims fail because they make no "allegation that the corn or soy at the level detected would cause a health issue or nutritional deficiency." No such allegation is needed. "[T]he actual physical 'impact' of the products at issue on any 'specific [class member's] health' has no bearing on whether the challenged health statements are false, deceptive, or materially misleading." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1100 (N.D. Cal. 2018). In a similar case, the court found that "[t]he fact that Plaintiff has not alleged what levels of Heavy Metals and BPA are unsafe for pets does not doom her claims." *Watson v. Solid Gold Pet, LLC*, No. CV 18-6479 PSG (SSX), 2019 WL 3308766, at *4 (C.D. Cal. Feb. 22, 2019). Instead, "'the falsity or deceptiveness of the challenged health statements on the products at issue

16

[would] be determined based solely on whether the health statements are likely to deceive or mislead a hypothetical reasonable consumer' in light of the amount of Heavy Metal and BPA present in the Products." *Id.* (quoting *Hadley*, 324 F. Supp. 3d at 1100-01).

Next, Big Heart contends that plaintiffs have not demonstrated that the representations they place at issue were material to their purchasing decision. MTD 20-21. "A representation is 'material' . . . if a reasonable consumer would attach importance to it *or* if the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action." *Hinojos v. Koh''s Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013*), as amended on denial of reh'g and reh'g en ban*c (July 8, 2013) (emphasis in original). Here, plaintiffs specifically allege that the "Grain Free," "No Corn," and "No Soy Protein" representations were material to them as consumers, and that they relied on the representations on the Product packaging in deciding to purchase the Nature's Recipe Food. FAC ¶¶ 6-8, 39-41; *see id.* ¶ 25 ("Pet owners who purchase "grain free," products with "no corn," and products with "no soy protein" pay a premium in order to alleviate their pets' allergies and provide various health benefits associated with a grain free diet."). Plaintiffs also assert that Big Heart knew or had reason to know that consumers are likely to regard the matter important given that they allege that Big Heart touts the "Benefits of Grain Free" on its website. *Id.* ¶ 14.

Plaintiffs have sufficiently alleged that reasonable consumers are likely to understand Big Heart's "Grain Free," "No Corn," and "No Soy Protein" representations to mean that Nature's Recipe Food does not contain significant amounts of corn and soy, and that these representations were material to them.

### 2. UCL Claim

The UCL creates a cause of action for business practices that are (1) fraudulent, (2) unlawful, (3) or unfair. Cal. Bus. & Prof. Code § 17200. Each "prong" of the UCL provides a separate and distinct theory of liability. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted).

#### a. Fraudulent Prong

The fraudulent prong requires Rule 9(b) heightened pleading. Big Heart's argument here

is again repetitive of what is already discussed under Section III.A of this Order. It argues that plaintiffs (i) have not pleaded sufficient facts to satisfy the reasonable consumer test or (ii) sufficiently explain their "independent testing". MTD 23-24. Because I find that plaintiffs have met the Rule 9(b) pleading standard, their UCL claim is sufficiently alleged.

I also note that my decision in *Victor v. R.C. Bigelow, Inc.*, No. 13-CV-02976-WHO, 2014 WL 12642194, at *4 (N.D. Cal. July 18, 2014) is distinguishable. In that case, plaintiff alleged that the "delivers healthful antioxidants" label on Bigelow's tea boxes was deceptive but he failed to "allege that Bigelow's products do not in fact have antioxidants or that the antioxidants are not in fact healthful." He failed to plausibly plead a fraudulent prong UCL claim because he did not plead what expectations a reasonable consumer might have from seeing or hearing that statement such that they were fraudulently misled by what Bigelow actually offered. By contrast, plaintiffs here allege that the Product do in fact have corn and soy despite the "Grain Free," "No Corn," and "No Soy Protein" labels. It is entirely plausible that a reasonable consumer would understand those labels to indicate that no corn or soy is present in the Product.[5]

### b.    Unlawful Prong

The "unlawful" prong of the UCL "borrows violations of other laws and treats them as independently actionable." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006). Big Heart argues that plaintiffs' claim under the unlawful prong of the UCL should be dismissed because plaintiffs' predicate claims under the FAL and CLRA fail to satisfy Rule 9(b)'s heightened pleading standard. MTD 25. As previously discussed, plaintiffs' allegations comply with Rule 9(b).

### c.    Unfair Prong

Courts in this district have held that where the unfair business practices alleged under

---

[5] Big Heart takes issue with the academic studies cited in the FAC. MTD 24. But plaintiffs provide the academic studies to show that their independent testing on Nature's Recipe Food is consistent with numerous recent peer-reviewed studies that have found that the pet food industry to be rife with inaccurate product labels, non-conforming ingredients, and cross-contamination. Oppo. MTD 3; FAC ¶¶ 32-38. It would have been problematic if plaintiffs only provided the academic studies and nothing else. But here they specifically allege that independent testing of Big Heart's Product confirms that it contains significant amounts of both corn and soy. FAC ¶ 23.

the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive. *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017). Plaintiffs have adequately pleaded violations under the fraudulent and unlawful prongs of the UCL and accordingly their unfair prong claim is adequately pleaded as well.

### C. Breach of Warranty Claims

In their opposition, plaintiffs voluntarily withdrew their Magnuson-Moss Warranty Act claim (Count 1). Oppo. MTD 26 n.21. I address the remaining breach of express warranty and breach of implied warranty of merchantability claims below.[6]

### 1. Breach of Express Warranty

"A plaintiff asserting a breach of warranty claim must allege facts sufficient to show that (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 965-66 (N.D. Cal. 2017) (citation omitted). Judges in this district have found that statements on a food label can create an express warranty. *See, e.g.*, *Brown v. Hain Celestial Grp.*, Inc., 913 F. Supp. 2d 881, 899-90 (N.D. Cal. 2012) (interpreting "Pure, Natural & Organic" label on cosmetic products as express warranty); *Vicuna v. Alexia Foods, Inc.*, No. C 11-6119 PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) (interpreting "All Natural" label on potatoes as express warranty that they did not have artificial ingredients).

Plaintiffs contend that the labels on Big Heart's Product constitute express warranties, including the promises of "Grain Free," "No Corn," and "No Soy Protein." FAC ¶ 6-8. These claims are sufficient under California law to constitute express warranties. *See, e.g.*, *Zeiger*, 304

---

[6] Big Heart complains that plaintiffs' claims for breach of express warranty, breach of implied warranty of merchantability and unjust enrichment do not specify the respective state laws under which these claims are brought and therefore mandate dismissal. MTD 28. But plaintiffs clearly allege that "California law applies to the claims of all class members, as all class members are residents of California." FAC ¶ 42.

United States District Court
Northern District of California

F. Supp. 3d at 853 (denying dismissal of plaintiffs' express warranty claims for dog food with label that included promises of "Unrivaled Quality Standards" and that the products are "natural, safe and pure").

Big Heart repeats its argument that plaintiffs' allegations are inadequately pleaded because they do not explain their "independent testing" that revealed the presence of corn and soy nor define corn, soy, and grains. MTD 30. For the same reasons stated above, Big Heart's motion to dismiss the express warranty claim is DENIED.

### 2.    Breach of Implied Warranty

Plaintiffs allege breaches under both implied warranty theories: (1) there is a general warranty in all sales contracts that the product is fit for the ordinary purpose for which such good is used; and (2) the product does not conform to the promises or affirmations of fact made on the container or label. FAC ¶¶ 74-79.

Big Heart argues that the first type of implied warranty fails because plaintiffs have not alleged any facts that the Products are unfit for consumption or otherwise inedible. MTD 31. Plaintiffs plausibly allege that Nature's Recipe Food is specifically marketed for dogs with grain allergies, and that because it contains corn and soy it causes dogs to suffer allergic reactions and therefore is not fit for its ordinary purpose. *See* FAC ¶ 2 ("Many dogs suffer allergic reactions to food containing grains."); ¶ 25 ("Pet owners who purchase 'grain free,' products with 'no corn,' and products with 'no soy protein' pay a premium in order to alleviate their pets' allergies and provide various health benefits associated with a grain free diet."). Named plaintiffs Coleman and Rogers further allege that they incurred hundreds of dollars in veterinarian costs when their dogs showed signs of allergic reactions after eating the Product. *See id.* ¶¶ 40-41. Plaintiffs have plausibly alleged an ordinary purpose implied warranty claim. *See Thomas v. Costco Wholesale Corp.*, No. 12-CV-02908-BLF, 2014 WL 5872808, at *3 (N.D. Cal. Nov. 12, 2014) ("In the context of food cases, a party can plead that a product violates the implied warranty of merchantability by alleging, for example, that the product was not safe for consumption, . . . or that the product was contaminated or contained foreign objects.") (internal citation and quotation marks omitted).

United States District Court
Northern District of California

Big Heart also moves to dismiss both types of implied warranty on grounds that plaintiffs lack privity given that they purchased the Products from local retail stores and not directly from the manufacturer Big Heart. MTD 32. Courts are divided over whether the law requires that consumers stand in vertical privity with a manufacturer in order to bring an implied warranty claim or if there are excused from this requirement as intended third-party beneficiaries. Those that recognize a third-party beneficiary exception typically cite to the California Court of Appeal's decision in *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69 (1978); those that do not recognize a third-party beneficiary exception cite to the Ninth Circuit's decision in *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008).

I previously took a side on this issue in *Ziegler* and held that purchases of contaminated dog food may sue a remote dog food manufacturer despite lack of vertical privity. 304 F. Supp. 3d at 854. I agreed with Judge Edward M. Chen's analysis in *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 984 (N.D. Cal. 2014) and found that "[g]iven that *Clemens* did not directly address the third-party beneficiary exception, nor did it address *Gilbert*, it need not be read to foreclose the third-party beneficiary exception to privity under California law." 304 F. Supp. 3d at 854.

Similarly, plaintiffs here may proceed on their implied warranty claims in the absence of privity. Big Heart's motion to dismiss the implied warranty claims is DENIED.

### D. Unjust Enrichment

Big Heart contends that plaintiffs' unjust enrichment claim is inconsistent with their breach of express warranty claim because the breach of express warranty claim alleges that a contract existed and in California "the theory of unjust enrichment is inapplicable where there is an enforceable contract." *Ramirez v. Baxter Credit Union*, No. 16-CV-03765-SI, 2017 WL 118859, at *5 (N.D. Cal. Jan. 12, 2017). It concludes that plaintiffs cannot maintain their quasi-contract unjust enrichment claim along with their contract-based breach of express warranty claim. MTD 33.

But in its reply, Big Heart concedes that plaintiffs may plead in the alternative pursuant to

Federal Rule of Civil Procedure 8(d).[7]  It pivots to argue that the unjust enrichment claim should be dismissed because plaintiffs have failed to plausibly allege their consumer protection and breach of warranty claims.  Reply MTD 17.  But unlike the case cited by Big Heart, plaintiffs have sufficiently pleaded fraud and their breach of warranty claims.  *See Kahn v. FCA US LLC*, No. 2:19-CV-00127-SVW-SS, 2019 WL 3955386, at *8 (C.D. Cal. Aug. 2, 2019).  Big Heart's motion to dismiss the unjust enrichment claim is DENIED.

### E.    Standing to Seek Injunctive Relief

The Ninth Circuit has held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018).  The *Davidson* court provided examples of actual and imminent harm, including cases where "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to," and where "the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved."  *Id.* at 969-70.

Plaintiffs fail to make such allegations here.  Their allegations do not make clear that they are unable to rely on Big Heart's representations in deciding whether or not they should purchase the product in the future nor do they straightforwardly allege that they want to or intend to purchase the product in the future.  *See, e.g.*, *Anthony v. Pharmavite*, No. 18-CV-02636-EMC,

---

[7] "Rule 8(d) of the Federal Rules of Civil Procedure expressly permits a plaintiff to plead claims in the alternative, and courts . . . have permitted unjust enrichment and breach of contract claims to proceed simultaneously."  *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1042 (N.D. Cal. 2018) (citation and quotation marks omitted).  The Ninth Circuit has clearly held that a district court errs when it dismisses a plaintiff's "unjust enrichment" claim as "duplicative of or superfluous of" other claims.  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015).

1    2019 WL 109446, at *6 (N.D. Cal. Jan. 4, 2019) (dismissing injunctive relief claim where the

2    import of plaintiffs' allegation was that defendant could do nothing to alter its advertising or

3    product to make product beneficial to consumers and plaintiffs did not allege that they intended to

4    purchase the accused product again in the future).

5        Big Heart's motion to dismiss the injunctive relief claim is GRANTED with leave to

6    amend.

7    **F.    Equitable Relief**

8        Plaintiffs seek equitable relief for their unjust enrichment claim (Count 4) and California

9    consumer fraud claims under the UCL (Count 5), FAL (Count 6) and CLRA (Count 7).  FAC ¶¶

10   84, 97-98, 106-07, 114.  Big Heart seeks dismissal of these equitable relief claims because

11   plaintiffs have "alleged other claims presenting an adequate remedy at law."  MTD 35.

12       Plaintiffs respond that they should be permitted to plead in the alternative.  Oppo. MTD

13   30.  However, where an equitable relief claim "relies on the same factual predicates as a plaintiff's

14   legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those

15   legal causes of action."  *In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *5

16   (N.D. Cal. Mar. 12, 2014).  Plaintiffs point to my previous decision in *Johnson v. Nissan N. Am.,*

17   *Inc.*, 272 F. Supp. 3d 1168, 1186 (N.D. Cal. 2017), where I denied dismissal of plaintiffs'

18   equitable claims.  But I held that the plaintiffs could "assert claims for damages and equitable

19   relief," in part because "at least some of plaintiffs' claims for equitable relief [were] based on a

20   fraudulent concealment theory, *separate and apart from* their breach of warranty theory based on

21   manufacturing defect."  *Id.* at 1186 (emphasis added); *see also Donohue v. Apple, Inc.*, 871 F.

22   Supp. 2d 913, 933 (N.D. Cal. 2012) (finding plaintiffs could plead equitable relief claims in the

23   alternative where plaintiffs had claims under two separate and distinct theories—fraud and breach

24   of contract).

25       The FAC does not make clear whether plaintiffs' claims for equitable relief and damages

26   are based on the same theory (false advertising) or on separate distinct theories.  Big Heart's

27   motion to dismiss the equitable relief claims is GRANTED with leave to amend.

28

                                                    23

### G. Punitive Damages

Finally, I address whether plaintiffs have sufficiently pleaded that they are entitled to punitive damages. The FAC lists punitive damages as a prayer for relief but does not mention it anywhere else. Punitive damages are not recoverable under the UCL or FAL. *Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 915 (Ct. App. 2016) ("The remedies available in a UCL or FAL action are generally limited to injunctive relief and restitution."). Nor are punitive damages available for plaintiffs' claim for breach of express warranty under the California Commercial Code. *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 212 (1991). However, a consumer seeking damages under the CLRA may recover punitive damages. *Victorino v. FCA US LLC*, No. 16CV1617-GPC(JLB), 2016 WL 6441518, at *13 (S.D. Cal. Nov. 1, 2016) (citing Cal. Civ. Code § 1780(a)(4)).

Big Heart argues that plaintiffs have failed to meet their requisite burden for punitive damages under the CLRA because they fail to allege "both 'oppression, fraud, or malice' and that the conduct at issue was performed or ratified by an 'officer, director, or managing agent.'" MTD 36-37 (quoting *Graham v. Wal-Mart Stores, Inc.*, No. 2:14-02916, 2017 WL 3783101, at *4 (E.D. Cal. Aug. 31, 2017)); *see* Cal. Civ. Code § 3294(b). Plaintiffs do not address this argument in their opposition and instead contend that "a complaint is not subject to a motion to dismiss for failure to state a claim under Rule 12(b)(6) because the prayer seeks relief that is not recoverable as a matter of law." Oppo. MTD 33 (quoting *Monaco v. Liberty Life Assur. Co.*, No. C06-07021 MJJ, 2007 WL 420139, at *6 (N.D. Cal. Feb. 6, 2007)). While that may be true, plaintiffs are still required to adequately plead their request for punitive damages under the CLRA. *See Young v. Cree, Inc.*, No. 17-CV-06252-YGR, 2018 WL 1710181, at *1,9 (N.D. Cal. Apr. 9, 2018) (plaintiff's request for punitive damages under the CLRA dismissed, with leave to amend, because plaintiff failed to allege that "an officer, director, or managing agent of the corporation . . . consciously disregarded, authorized, or ratified each act of oppression, fraud, or malice").

Big Heart's motion to dismiss plaintiff's request for punitive damages is GRANTED with leave to amend.

## IV. MOTION TO STRIKE PLAINTIFFS' CLASS DEFINITION AS OVERBROAD

I have repeatedly rejected motions to strike class allegations as "premature" at the dismissal stage, expressing preference to address class certification issues after the pleadings are settled and discovery finished. *See, e.g.*, *Parducci v. Overland Sols., Inc.*, 399 F. Supp. 3d 969, 986 (N.D. Cal. 2019); *Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178, 1196 (N.D. Cal. 2018); *Juarez v. Citibank, N.A.*, No. 16-cv-01984-WHO, 2016 WL 4547914, at *5 (N.D. Cal. Sept. 1, 2016). Striking class allegations at the pleading stage is only appropriate where the defendant presents an argument that completely precludes certification of *any class*, not just the class currently defined in the complaint. *Colgate*, 345 F. Supp. 3d at 1196 (internal citation omitted). This is "because the shape and form of a class action evolves only through the process of discovery." *Frenzel v. Aliphcom*, No. 14-cv-03587-WHO, 2015 WL 4110811, at *13 (N.D. Cal. July 7, 2015).

Plaintiffs define their purposed class as follows: "All persons residing in the State of California who, during the maximum period of time permitted by the law, purchased Nature's Recipe Food primarily for personal, family or household purposes, and not for resale." FAC ¶ 44. Big Heart moves to strike this class definition because it is overbroad and necessarily implicates individualized inquiries that would not satisfy the requirements of Rule 23. MTD 27. In particular, it argues that the class definition does not exclude persons (i) who did not experience any issue with the Product or (i) did not see or rely on the labeling or advertising complained of, either on the Product packaging or on the website, when deciding to purchase the Product. *Id.*

In *Krommenhock v. Post Foods, LLC*, I recently certified a class similarly defined as "All persons, who, on or after [particular date], purchased in California, for household use and not for resale or distribution, one or more of the following Post cereal varieties." No. 16-CV-04958-WHO, 2020 WL 1139582, at *2 (N.D. Cal. Mar. 9, 2020). Plaintiffs in that case alleged a common injury because "each class member paid a premium for the Products due to their misleading health and wellness claims demanded in the market." *Id.* at *3 (citation and quotation marks omitted). I also found that "California law does not ask whether class members actually saw or relied on representations, but simply whether the representations were consistently made

25

and were material to a reasonable consumer." *Id.* at *5.

The class definition here is not overbroad as alleged. At the hearing, plaintiffs clarified that the common injury alleged here is not that each class member's dog suffered from eating the Product, but rather that each class member paid a premium for the Products due to their misleading representations. The class definition is also not required to include whether or not class members saw or relied on the representations. Even if the class definition is overbroad as alleged, it is premature to strike it at this stage as plaintiffs "should at least be given the opportunity to make the case for certification based on appropriate discovery." *Ramirez v. Baxter Credit Union*, No. 16-CV-03765-SI, 2017 WL 1064991, at *7 (N.D. Cal. Mar. 21, 2017) (citation omitted). Big Heart's motion to strike plaintiffs' proposed class definition is DENIED.

## CONCLUSION

Big Heart's motion to transfer is DENIED. Its motion to dismiss for lack of Article III standing is DENIED and its motion to dismiss for failure to state a claim is DENIED except that it is GRANTED with leave to amend with respect to plaintiffs' injunctive relief standing and entitlement to equitable relief and punitive damages. Big Heart's motion to strike the class definition as overbroad is DENIED.

**IT IS SO ORDERED.**

Dated: March 16, 2020

William H. Orrick
United States District Judge